UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| LOUIS RAY PARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:07-CV-400 |
| | ) | (VARLAN / SHIRLEY) |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 12 and 13] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 14 and 15]. Plaintiff Louis Ray Partin seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of Defendant Commissioner.

On January 19, 2006, Plaintiff filed an application for supplemental security income payments, claiming disability as of September 15, 2004. [Tr. 55-58.] After his application was denied initially and upon reconsideration, Plaintiff requested a hearing. On May 15, 2007, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 736-47.] At the hearing, the ALJ heard testimony from Plaintiff and Dr. Robert Spangler, a Vocational Expert ("VE"). On June 19, 2007, the ALJ found that Plaintiff was not disabled because he remains capable of performing light work. [Tr. 12-19.] The Appeals Council denied Plaintiff's request for review; thus

the decision of the ALJ became the final decision of the Commissioner. Plaintiff now seeks judicial review of the Commissioner's decision.

**I.      ALJ Findings**

The ALJ made the following findings:

> 1.   The claimant has not engaged in substantial gainful activity since September 15, 2004, the alleged onset date. (20 C.F.R. 404.1520(b) and 416.971 *et seq.*).
>
> 2.   The claimant has the following severe impairments: history of seizures, asthma, and chronic pancreatitis. (20 C.F.R. 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity for light work that can be performed with a limited education, with all seizures precautions and no [sic] exposed to excessive dust.
>
> 5. The claimant has no past relevant work. (20 C.F.R. 416.965).
>
> 6. The claimant was born on November 29, 1966 and was 37 years old, which is defined as a younger individual age 18-44, on the date the application was filed. (20 C.F.R. 416.963).
>
> 7. The claimant has a limited eighth grade education and is able to communicate in English. (20 C.F.R. 416.964).
>
> 8. Transferability of job skills is not an issue because the claimant does not have past relevant work. (20 C.F.R. 416.968).

2

> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. 416.960(c), and 416.966).
>
> 10. The claimant has not been under a "disability" as defined in the Social Security Act, since January 19, 2006, the date the application was filed. (20 C.F.R. 416.920(g)).

[Tr. 14-19.]

## II. Disability Eligibility

An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B). Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.150). Plaintiffs bear the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. Standard of Review

In reviewing the Commissioner's determination of whether an individual is disabled, the Court is limited to determining whether the ALJ applied the correct legal standards and whether there is substantial evidence in the record to support the ALJ's findings. Longworth v. Comm'r of Soc. Sec., 402 F.3d 591, 595 (6th Cir. 2005). If the ALJ's findings are supported by substantial evidence based upon the record as a whole, they are conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 534 (6th Cir. 2001) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is immaterial whether the record may also possess substantial

evidence to support a different conclusion from that reached by the ALJ or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986).

## IV. Analysis

On appeal, Plaintiff argues that substantial evidence does not support the ALJ's disability determination. Plaintiff contends the ALJ erred by: (A) selectively analyzing the evidence; (B) finding no diagnosed mental impairment and ignoring evidence which supported a finding that he suffers from a mental impairment; (C) improperly considering his past alcohol and drug abuse; and (D) presenting an improper hypothetical to the VE that did not account for all of the Plaintiff's limitations. [Doc. 13.] The Commissioner, in response, contends substantial evidence supports the ALJ's finding of non-disability and any arguments to the contrary must fail. [Doc. 15.] Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec. of Health & Human Serv., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

### A. *Selectively Analyzing the Evidence of Record*

The Plaintiff alleges that the ALJ selectively analyzed the evidence of record. Specifically, the Plaintiff contends that the ALJ selectively analyzed the medical diagnoses and records of Dr. Zakir Hussain, a physician who saw the Plaintiff between August and December 2006. [Doc. 13 at 6.] The Plaintiff alleges that the ALJ gave heightened weight to Dr. Hussain's report that Plaintiff had inconsistent urine drug screens, but later rejected Dr. Hussain's diagnosis that antidepressants were appropriate for the Plaintiff. [Doc. 13 at 6.] Defendant Commissioner, on the other hand, contends that Dr. Hussain merely reported the results of the urine tests and that Dr. Hussain's prescribing antidepressants does not prove any mental work-related functional restrictions. [Doc.

5

15 at 17.]

### (i) References to Consultations with Dr. Hussain in the ALJ's Determination of Severe Impairments

The ALJ analyzed the Plaintiff's complaints under 20 C.F.R. § 416.920(c) and found three severe impairments: a history of seizures, asthma, and chronic pancreatitis. [Tr. 14.] The evidence presented was insufficient to classify the Plaintiff's complaints of back pain, headaches, numbness, insomnia, loss of balance, high blood pressure, nervousness, problems concentrating, and poor memory as severe impairments. [Tr. 15.]

> In regards to the nervousness, problems concentrating, and poor memory, the ALJ noted:
>
> The evidence of record reflects that the claimant has not sought or received treatment from a primary care physician or a mental health professional at any time pertinent to this decision. The record reflects that claimant reported to Dr. Hussain on August 11, 2006, that he had a history of anxiety and reported that he was nervous around people. The record reflects that the claimant is not seeing anyone for his nervousness, and he has no complaints of it worsening.

[Tr. 15.] Plaintiff complained to Dr. Hussain that he was nervous, and Dr. Hussain prescribed Hydroxzine for this anxiety. [Tr. 17.] The ALJ found that Dr. Hussain was not a mental health professional and that Dr. Hussain had made his prescription based upon the Plaintiff's subjective complaint. [Tr. 17.] There is evidence to indicate that Plaintiff reported nervousness while giving his medical history, but the report was incidental to treatment for the chief complaint of pancreatitis and seizures. [Tr. 562.]

The Plaintiff was examined by a psychologist, Dr. Spjut in October 2003 for state disability determinations rather than treatment of the condition. [Tr. 451.] Although the visit with Dr. Spjut was a consultation with a mental health professional, it was not treatment for the condition. Substantial evidence supports the ALJ's finding that the Plaintiff did not seek or receive treatment

6

for his nervousness, poor concentration, and poor memory from a primary care physician or a mental health professional during the period pertinent to the ALJ's assessment. [Tr. 15.] The weight accorded to the visit given its purpose and age is supported by the evidence of record.

The ALJ's decision not to classify the statements to Dr. Hussain or the consultation with Dr. Spjut as treatment is supported by substantial evidence, and thus, the ALJ did not commit error.

    **(ii)  References to Consultations with Dr. Hussain in the ALJ's Determination of Residual Functional Capacity**

After determining the Plaintiff's severe impairments, the ALJ evaluated the Plaintiff's residual functional capacity. [Tr. 16.] Because a number of the Plaintiff's alleged impairments disable through their symptoms rather than the condition itself, a two-part analysis is used in evaluating complaints of disabling pain. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 247 (6th. Cir. 2007); 20 C.F.R. 416.929(a). First, there must be an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). If such an impairment exists, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. Id. Relevant factors for the ALJ to consider in his evaluation of symptoms include the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms, such as lying on one's back; and any other factors bearing on the limitations of the claimant to perform basic functions. Rogers, 486 F.3d at 247; 20 C.F.R. 416.929(a).

The ALJ evaluates the credibility of witnesses, including the claimant, who testify to the

7

disabling symptoms, Rogers, 486 F.3d at 247, and "[d]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence," Walters, 127 F.3d at 531. However, credibility determinations should find support in the record and not be based solely upon an "intangible or intuitive notion about an individual's credibility." Rogers, 486 F.3d at 247 (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, at * 4).

In the present case, the ALJ found that the impairments could reasonably be expected to produce the alleged symptoms but concluded that the Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms "were not entirely credible." [Tr. 17.] The ALJ found: no objective clinical finding to support Plaintiff's restricted lifestyle and classified it as self-imposed; the Plaintiff did not seek treatment for his conditions from sources available to low-income persons in his area; and the Plaintiff ceased medical care from Dr. Hussain after being informed that Dr. Hussain would no longer prescribe narcotic pain medications because of an inconsistent drug screening [Tr. 17] – an inconsistent drug screening of which the Plaintiff denied having knowledge [Tr. 744]. The ALJ's reference to the drug tests was not an evaluation of the weight of Dr. Hussain's medical opinion. Instead, the ALJ discounted the credibility of the Plaintiff's complaints about his symptoms because after the drug screening the Plaintiff no longer sought treatment with a primary care physician for his impairment. The ALJ's use of Dr. Hussain's refusal to prescribe narcotics in determining the Plaintiff's is supported by substantial evidence, and thus, the ALJ did not commit error.

Both the ALJ's finding that the Plaintiff did not seek treatment for his nervousness and the ALJ's finding that the inconsistent urine screen and corresponding end of treatment were relevant to determining Plaintiff's credibility are supported by substantial evidence. Thus, the Plaintiff has failed to prove that the ALJ selectively analyzed the evidence of record. Accordingly, the Court

8

finds that the ALJ did not commit error.

### B.     *Mental Impairment Evidence*

Plaintiff argues that the ALJ erred by considering evidence pertaining to prior applications but failing to consider Dr. Spjut's October 2003 consultive examination of the Plaintiff. [Doc. 13 at 7.] The Commissioner counters that affording Dr. Spjut's opinion little weight was proper because it is one of the oldest reports in the record and was rendered for an application for benefits approximately one year before the disability onset date of September 15, 2004. [Doc. 15 at 18.]

In his evaluation of the Plaintiff's severe impairments, the ALJ stated, "[t]he evidence of record reflects that the claimant has not sought or received treatment from a primary care physician or a mental health professional at any time pertinent to this decision. . . . The record reflects that the claimant is not seeing anyone for his nervousness, and he has no complaints of worsening." [Tr. 15.] Plaintiff alleges that the ALJ found that the Plaintiff had "not seen a mental health physician or been diagnosed with a mental impairment" [Doc. 13 at 6], but the ALJ actually found that the Plaintiff had not been treated for, nor was he undergoing treatment for his nervous condition, not that he had never been seen or diagnosed. [Tr. 15.]

The evidence of record indicates that the consultation with Dr. Spjut was a single incident not meant for treatment. [Tr. 451.] Consultative examinations do not provide detailed or longitudinal evidence of conditions and, as a result, are given less weight than other evidence. 20 C.F.R. § 404.1527(d)(1). Therefore, the ALJ's weighing of the mental impairment evidence including the report of Dr. Spjut is supported by substantial evidence, and the ALJ did not commit error.

### C.     *Evidence of Drug and Alcohol Abuse*

Plaintiff contends that Plaintiff's past history of alcohol abuse was a factor in the ALJ's

9

decision and that the ALJ selectively considered evidence from periods while the Plaintiff was drinking. [Doc. 13 at 7.] The Commissioner argues that the criticism is unwarranted because the Plaintiff continued to drink alcohol through at least a portion of the alleged disability period and is factually incorrect because the ALJ based his decision on objective findings, opinion evidence, and the Plaintiff's treatment history. [Doc 15 at 18-19.]

There is substantial evidence to support the ALJ's finding and no indication that the denial of disability was based upon the Plaintiff's alcohol abuse. The decision's only mention of alcohol is that in October 2005, "Dr. Mengesha reported that the [Plaintiff's] pancreatitis appeared to be alcohol related but appeared stable." [Tr. 14.] The ALJ recognized the pancreatitis as a severe impairment despite the impairment's relationship to alcohol– indicating the alcohol was not related to the denial of disability. [Tr. 14.] Based upon consultation of both the opinion of a VE and information contained in the Dictionary of Occupational Titles, the ALJ concluded that the Plaintiff could perform a significant number of jobs present in the national economy. [Tr. 18.] There is no indication that the ALJ selectively analyzed evidence of alcohol abuse or based his decision on evidence other than that from the VE and the occupational research. The ALJ's decision is supported by substantial evidence, and the Court finds that the ALJ did not commit error.

10

Case 3:07-cv-00400   Document 16   Filed 01/05/09   Page 10 of 12   PageID #: 80

decision and that the ALJ selectively considered evidence from periods while the Plaintiff was drinking. [Doc. 13 at 7.] The Commissioner argues that the criticism is unwarranted because the Plaintiff continued to drink alcohol through at least a portion of the alleged disability period and is factually incorrect because the ALJ based his decision on objective findings, opinion evidence, and the Plaintiff's treatment history. [Doc 15 at 18-19.]

There is substantial evidence to support the ALJ's finding and no indication that the denial of disability was based upon the Plaintiff's alcohol abuse. The decision's only mention of alcohol is that in October 2005, "Dr. Mengesha reported that the [Plaintiff's] pancreatitis appeared to be alcohol related but appeared stable." [Tr. 14.] The ALJ recognized the pancreatitis as a severe impairment despite the impairment's relationship to alcohol– indicating the alcohol was not related to the denial of disability. [Tr. 14.] Based upon consultation of both the opinion of a VE and information contained in the Dictionary of Occupational Titles, the ALJ concluded that the Plaintiff could perform a significant number of jobs present in the national economy. [Tr. 18.] There is no indication that the ALJ selectively analyzed evidence of alcohol abuse or based his decision on evidence other than that from the VE and the occupational research. The ALJ's decision is supported by substantial evidence, and the Court finds that the ALJ did not commit error.

### D. *Hypothetical Presented to VE*

Finally, the Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the hypothetical question presented to the VE did not accurately portray the Plaintiff's physical or mental impairments. [Doc. 13 at 9.] The Commissioner argues that the hypothetical was proper because it need not include unsubstantiated complaints– in this case, Plaintiff's illiteracy, borderline personality disorder, dysthymic disorder, and avoidant personality disorder. [Doc. 15 at 21.]

"[T]he ALJ is charged with the responsbility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of [his] residual functional capacity.'" Webb v. Comm'r of Soc. Sec., 368 F.3d 629, 633 (6th. Cir. 2004) (quoting 20 C.F.R. § 416.920(a)(4)(iv)). "[T]he ALJ does not need to list a claimant's medical conditions in the hypothetical question posed to a VE." Cooper v. Comm'r of Soc. Sec., 217 Fed. Appx. 450, 453 (6th. Cir. 2007) (citing Webb, 368 F.3d at 633). The ALJ is only required to accurately describe the claimant's residual functional capacity– "what the claimant 'can and cannot do.'" Webb, 368 F.3d at 631 (quoting Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 239 (6th. Cir. 2002)).

The ALJ analyzed the Plaintiff's complaints under 20 C.F.R. 416.920(c) and found three severe impairments: a history of seizures, asthma, and chronic pancreatitis. [Tr. 14.] There is substantial evidence to support the ALJ's finding that the Plaintiff suffered only from these three severe impairments. The ALJ asked the VE to assume a person who has a seventh grade education, is limited to work with all seizure precautions, and should not be exposed to excessive dust. [Tr. 744.] This hypothetical included all three of the severe impairments and accurately described what the Plaintiff could and could not do. There is substantial evidence to support the use of this hypothetical, and the Court finds that the ALJ did not commit error in posing this question to the

VE.

**V.      Conclusion**

Accordingly, the Court finds that the ALJ properly reviewed and weighed all of the medical source opinions to determine Plaintiff is capable of performing light work. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment [Doc. 12] be **DENIED** and that the Commissioner's Motion for Summary Judgment [Doc. 14] be **GRANTED**.

                                      Respectfully submitted,

                                         s/ C. Clifford Shirley, Jr.
                                      United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).